## A04A2116. GEORGIA DEPARTMENT OF TRANSPORTATION v. CRUMBLEY.
### (610 SE2d 663)

SMITH, Presiding Judge.

In this condemnation case, the Georgia Department of Transportation (the "DOT") appeals from a judgment on the jury verdict in favor of the property owner. In its sole enumeration of error, the DOT contends that the trial court erred in instructing its expert witness to recalculate his assessment of consequential damages to the remainder of the property after partial condemnation and in instructing the jury to that effect. We disagree and affirm.

Nora S. Crumbley originally owned an L-shaped, 7.61-acre tract of land at the intersection of State Highway 20 and Simpson Mill Road in Henry County. It was bisected almost exactly by a power line easement, with approximately four acres lying between the easement and State Highway 20, and approximately three and one-half acres behind the power line. As part of a project to widen the state highway, the DOT condemned 1.42 acres of the parcel along the highway frontage. Crumbley contested the amount of compensation offered, and the case proceeded to a jury trial.

Two expert witnesses were presented by the parties on the issue of just and adequate compensation. Gary R. Hammond, Jr. testified for the DOT and placed the total just and adequate compensation at $249,800. H. M. "Mit" Bradford testified for Crumbley that the total just and adequate compensation was $615,000. The jury awarded compensation of $432,650, and the DOT appeals.

The ruling complained of occurred during the testimony of the DOT's expert, Hammond. He began by giving his calculations of the value of the condemned portion of the property. In making this calculation, he treated the entire parcel as a single unit, and assigned to it a uniform value of $1.75 per square foot before the taking. He deducted the portion condemned by the DOT, assigning it a value of $1.75 per square foot times the area taken. But then, in calculating the consequential damages, he divided the remaining land into two parts: the 2.61-acre portion on Highway 20 in front of the power easement (the "front parcel"), and the 3.5-acre portion on Simpson Mill Road behind the easement (the "back parcel"). According to Hammond, the back parcel was not damaged at all by the taking, but the front parcel incurred 75 percent damage. While he had originally

assigned the remainder a value of $471,868, deducting the $1.75 per square foot value of the land taken from the value of the land as a whole, he testified that the remainder had a value of $322,300.

At this point in Hammond's testimony, Crumbley objected that this method for valuation of the land was improper. The jury was excused, and a lengthy colloquy between court and counsel followed. The trial court questioned Hammond, who explained that in his original deposition testimony he calculated damages to the tract as a whole at 25 percent of the total, but decided to recalculate on the basis of 75 percent damages to the front parcel only. Upon further questioning by the court, the witness explained his calculations, beginning with the value of the remainder at $1.75 per square foot and setting forth two alternative methods for calculating consequential damages. First, looking at the front parcel only, he multiplied the 2.61 acres by 43,560 (the number of square feet in an acre), then by $1.75 to get a square-footage price, then applied the 75 percent reduction to get $149,568. Subtracting this figure from the value of the remainder at $1.75 per square foot ($471,868, as noted above), he arrived at $322,300, the damages figure he placed on the condemnation as a whole. Alternatively, he took the value of the remainder of 6.19 acres ($471,868) and multiplied it by the 25 percent reduction to obtain a figure of $117,966.

After still more discussion, the trial court denied Crumbley's motion to the extent she sought to challenge the witness's testimony as to the part taken. The court agreed, however, that the DOT's expert could not evaluate the parcel as a uniform whole for purposes of value and then divide it into two sections to calculate consequential damages. The judge stated that the appellate courts disapprove subdivision of a single piece of property for consequential damages, particularly after treating it as a whole for purposes of value. He informed counsel that he would "have to give some corrective instructions to the jury," and counsel did not object. After still more restating and argument of the issue, the trial court informed counsel that he would not "allow [the expert] to come in and testify the way he did earlier and then split [it] up for consequential damages."

The trial court recalled the jury and explained to the jurors that the witness had used two methods of calculating consequential damages, but that, as to one method, "I don't think [it] is an appropriate method. You have to value the damage to the whole of the remainder." He further instructed the jurors that the witness would "recalculate so that he can testify to his belief as to what the damage to the whole remainder might be." Counsel for the DOT did not except to the jury instruction or interpose further objection. Hammond returned to the stand and testified that he calculated 30 percent

damages to the remainder as a whole, giving consequential damages of $141,560 and a total recommended compensation for the owner of $249,800.

The DOT argues that the trial court's instruction forced it to use a "pro rata" valuation of the consequential damages to the land, as forbidden by *Wilmer v. Fulton County School Dist.*, 226 Ga. App. 884 (487 SE2d 709) (1997) (physical precedent only), and *Dunaway v. Columbia County*, 213 Ga. App. 840 (447 SE2d 31) (1994). While both parties relied upon these cases here and below, they are not controlling.

*Wilmer* and *Dunaway* do not involve the determination of consequential damages to the remaining land by condemnation of a part of the whole, but strictly the value of the part condemned. *Wilmer* at 884; *Dunaway* at 842. *Dunaway* mentions the calculation of consequential damages in passing, but only to demonstrate how the erroneous calculation of the value of the part condemned may result in double recovery of consequential damages. Id. at 842-843 (3). Claims for consequential damages in *Wilmer* were dismissed. 226 Ga. App. at 884. Finally, the cases do not, as the DOT contends, absolutely bar all pro rata valuation. Rather, they forbid valuation of the portion condemned on a pro rata basis relative to the entire tract, "in the absence of an evidentiary foundation for such a conclusion." (Citation and punctuation omitted.) Id. at 887. This is a correct statement of the law. Accord *Loggins v. Dept. of Transp.*, 264 Ga. App. 514, 516 (591 SE2d 365) (2003).

Here, in contrast to the situation in *Wilmer* and *Dunaway*, the expert testified not to the value of the land condemned, but to the consequential damages the removal of the condemned portion imposed upon the remaining property.

> Where a portion of property is taken for a public use, the condemnee is entitled to compensation for consequential damages to the remainder caused by the taking. This has long been the rule in Georgia, even though the words "or damaged" were first included in the Constitution of 1877. Generally speaking, the measure of consequential damages is the diminution, if any, of the market value of the property not taken, caused by the taking of the part which is taken and the devoting of it to the purposes for which it is condemned.

(Citations and footnotes omitted.) *Wright v. MARTA*, 248 Ga. 372, 373 (283 SE2d 466) (1981). We therefore must consider whether "the property not taken" includes the entire parcel, or whether it may be subdivided for purposes of evaluating consequential damages.

An older case, *Gaines v. City of Calhoun*, 42 Ga. App. 89 (155 SE 214) (1930), is instructive on this issue. Gaines owned a piece of property that she subdivided into small building lots before the City of Calhoun raised the grade of an adjoining street, reducing the value of eight lots. The remaining lots in the subdivided tract were not part of the suit. The city sought and obtained a nonsuit[1] on the ground that damages must be calculated with regard to the entire property owned by Gaines. Id. at 90. This court reversed the nonsuit, holding that the subdivided lots should be treated as individual parcels of property for purposes of condemnation. Id. at 89 (3).

The controversy in *Gaines* was the opposite of that presented in this case. Here, Crumbley seeks to treat the land as a unified tract and the condemnor seeks to divide it into separate parcels for purposes of consequential damages. However, some of the pronouncements in *Gaines* remain helpful.

> It is well settled that where a tract of land having a value and a peculiar utility as an entirety is affected by public work, the owner of the land, for the purpose of recovering for damage resulting from the performance of the work, can not sever from the entire tract a portion of it which has been peculiarly damaged, and recover damages without reference to the benefits accruing to the entire tract by reason of the performance of the work. This is upon the theory that the tract as an entirety possesses a value determinable by its particular adaptability for use as one and an entire tract, and that the value of any particular portion of the tract is dependent upon its being incorporated in the whole tract and not as constituting a separate entity, as where the tract in its entirety is adaptable to use as a site for a factory, hotel, farm, etc., to which an individual lot carved out of the tract is not adaptable.

(Citations omitted.) Id. at 91 (2). The court went on to observe: "The mere contiguity, however, of several parcels of land belonging to one owner does not in itself render the lots in the aggregate an entire tract. Nor does the mere platting of a tract of land and its subdivision into vacant building lots necessarily destroy the oneness or unity of the entire property." (Citations omitted.) Id. at 93.

---

[1] The nonsuit was a remedy available under the civil practice rules in effect at the time and analogous to a directed verdict. See former Ga. Code Ann. § 110-310; *Specialized Alarm Svcs. v. Kauska*, 189 Ga. App. 863, 864 (1) (377 SE2d 703) (1989).

*Gaines* has been cited more recently, but always in connection with claims of consequential damages to an adjoining, but separate, tract of land. See, e.g., *Ga. Power Co. v. Bray*, 232 Ga. 558, 560-561 (207 SE2d 442) (1974) (consequential damages to contiguous tract of land with different ownership not recoverable in condemnation action); *Exxon Corp. v. Dept. of Transp.*, 202 Ga. App. 43, 44 (2) (413 SE2d 238) (1991) (adjoining property owner cannot claim consequential damages to his property due to loss of easement on condemned property). Still, *Gaines* strongly indicates that consequential damages must be calculated with reference to the entire remainder of a tract, not just a portion. We find this principle especially apt in this case because the record does not show any subdivision of the property or that it was ever treated as anything other than a single tract by the owner, and because the DOT initially treated the property as a single tract and then attempted to divide it for purposes of consequential damages only.

Moreover, as the trial court observed, Hammond's revised calculations resulted in a decrease in the amount of consequential damages and thus a lower total just and adequate compensation. An appellant must show harm as well as error. *In re Vincent*, 240 Ga. App. 876, 878 (2) (b) (525 SE2d 409) (1999). The DOT has not shown how it was harmed by the use of a method that reduced the amount it contended was owed to Crumbley. See *Electrical Workers &c. v. Dept. of Transp.*, 198 Ga. App. 345, 346 (1) (401 SE2d 347) (1991) (expert's opinion testimony as to value beneficial to appellant "and it was, therefore, not reversible error to have admitted that testimony. [Cit.]").

The DOT also contends the trial court's instruction to the jury "impeached the credibility of DOT's expert witness, discrediting his testimony in the eyes of the jury" and causing DOT to be "irreparably harmed . . . as evidenced by a jury verdict over $180,000.00 more than the estimated just and adequate compensation testified to by DOT's expert." But trial counsel not only acquiesced in the trial court's decision to give an instruction to the jury, he also failed to renew his objection after the jury was instructed. "If the appellant was dissatisfied with the court's instructions, it was incumbent upon him to request further instructions, renew his objection, or request a mistrial." (Citations and punctuation omitted.) *Williamson v. Ward*, 192 Ga. App. 857, 859 (2) (386 SE2d 727) (1989). Having failed to follow any of these alternatives, the DOT has presented nothing for our review on this ground. Id.

The jury awarded $432,650, an amount almost exactly equidistant between the value of $249,800 testified to by the DOT's witness

and that of $615,000 testified to by Crumbley's witness. "We repeatedly have declined to speculate regarding the jury's intent in announcing a particular verdict. [Cit.]" *Bruno v. Evans*, 200 Ga. App. 437, 442 (408 SE2d 458) (1991). But it appears just as likely that, rather than considering the DOT's witness to be impeached or discredited, the jury placed equal weight on the testimony of the competing expert witnesses. Again, the DOT simply has not demonstrated that the trial court's instruction was harmful.

"The admission or exclusion of expert testimony lies within the sound discretion of the trial court, whose decision will not be disturbed on appeal absent a clear abuse of discretion." (Citations and punctuation omitted.) *Riley v. State*, 278 Ga. 677, 683 (4) (604 SE2d 488) (2004). "The question of whether a witness has established a sufficient opportunity for forming a correct opinion or has stated a proper basis for expressing an opinion is for the trial court." (Citation, punctuation and footnote omitted.) *Henry County Water &c. Auth. v. Adelson*, 269 Ga. App. 206, 209 (4) (603 SE2d 714) (2004) (expert testimony on consequential damages). The trial court's application of the law with reference to the arbitrary division of un-subdivided property for purposes of calculating consequential damages was in essence correct, and it did not abuse its discretion in fashioning a remedy to correct the witness's valuation.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED FEBRUARY 18, 2005.

*Thurbert E. Baker, Attorney General, R. O. Lerer, Senior Assistant Attorney General, Power & Cooper, Warren R. Power*, for appellant.

*Smith, Welch & Brittain, William A. White, A. J. Welch, Jr.*, for appellee.